UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA INES ZAZUETA, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI[1] <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:20-cv-0749 JLT <br><br> ORDER GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL REVIEW (DOC. 17) AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) <br><br> ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF ROSA INEZ ZAZUETA, AND AGAINST DEFENDANT, KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY |

Rosa Ines Zazueta asserts she is entitled to disability benefits, a period of disability, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating her subjective statements. (*See generally* Doc. 17.) For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

In August 2015, Plaintiff applied for benefits, alleging she came disabled in November 2013 due to low back pain, numbness of legs, high blood pressure, arthritis, depression, and anxiety. (Doc.

---

[1] The action was originally filed against Andrew M. Saul in his capacity as the Commissioner of Social Security. (*See* Doc. 1 at 1.) The Court has substituted Kilolo Kijakazi, who has since been appointed the Acting Commissioner of Social Security, as the defendant. *See* Fed. R. Civ. P. 25(d).

1

11-2 at 79.)  The Social Security Administration denied the application at the initial level and upon reconsideration.  (*See generally id.* at 78-137.)  Plaintiff requested an administrative hearing and testified before an ALJ on May 17, 2018.  (*Id.* at 22.)  She testified at a second hearing on March 5, 2019.  (*Id.*)  The ALJ found Plaintiff was not disabled and issued an order denying benefits on March 20, 2019.  (*Id.* at 22-33.)  Plaintiff requested review of the decision by the Appeals Council, which denied the request on March 31, 2020.  (*Id.* at 6-8.)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of November 1, 2013.  (Doc. 11-2 at 25.)  Second, the ALJ found "[t]he claimant has the following severe impairments: Kienbock's disease of the right wrist; degenerative disc disease of the lumbar spine; rheumatoid arthritis; and degenerative joint disease of the right knee." (*Id.*)  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing.  (*Id.* at 26-27.)  Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), including lifting up to 20 pounds occasionally and ten pounds frequently, standing and/or walking up to four hours in an eight-hour workday, and sitting up to six hours in an eight-hour workday, with the following restrictions: she can frequently push/pull with the right upper extremity; she can occasionally walk on uneven terrain and climb ladders/ropes/scaffolds; she can occasionally handle and finger with the right upper extremity; she can occasionally crouch, stoop, crawl, and kneel; she can occasionally have exposure to unprotected heights, moving machinery, and driving.

(*Id.* at 27.)  With this residual functional capacity, the ALJ determined at step four that Plaintiff was "unable to perform any past relevant work."  (*Id.* at 31.)  However, ALJ found Plaintiff "acquired work skills from [her] past relevant work" and these skills were "transferable to other occupations with jobs existing in significant numbers in the national economy," such as an information clerk.  (*Id.* at

32.) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from November 1, 2013, through the date of the decision. (*Id.* at 33.)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues the ALJ erred in evaluating her statements concerning the severity of her symptoms and "impermissibly rejected" her testimony. (Doc. 17 at 6-16.) The Commissioner asserts the ALJ properly evaluated the testimony and found it "inconsistent with the objective and other evidence." (Doc. 18 at 4, emphasis omitted.) Thus, the Commissioner argues the "final decision is supported by substantial evidence and is in accordance with the law." (*Id.* at 11.)

**A.     Plaintiff's Subjective Statements**

     1.     Function report

On December 9, 2015, Plaintiff submitted a function report. (Doc. 11-2 at 301-309.) Plaintiff indicated she could not "do a lot of things" due to pain. (*Id.* at 301.) Plaintiff said she could not lift and carry heavy items, squat, bend, stand, or climb. (*Id.* at 306.) She said her impairments and conditions affected her ability to reach, walk, use her hands, and sit. (*Id.*) She reported difficulty sleeping due to pain and would "take… a while to start functioning" each day. (*Id.* at 302.) Plaintiff noted she could prepare her own meals and did so "weekly or when [she] can," but she was "unable to do chores." (*Id.*) She also reported difficulty with her legs and indicated she would not go out alone because she was "afraid to fall and [had] lots of anxiety." (*Id.* at 304.)

Plaintiff reported she had depression, which she believed caused her to be less interested in hobbies and engage in "less family activities." (Doc. 11-2 at 305.) Plaintiff believed her conditions also affected her memory, ability to complete tasks, concentrate, understand, follow instructions, and get along with others. (*Id.* at 306.) For example, Plaintiff noted she would "forget things" and "need[ed] a reminder to do personal needs." (*Id.* at 303.) She also reported she "was not able to handle" stress and did not handle changes in routine well. (*Id.* at 307.)

     2.     May 2018 hearing testimony

Plaintiff testified at an administrative hearing on May 17, 2018. (Doc. 11-3 at 62.) She reported she was 44 years old and had a tenth-grade education. (*Id.* at 65, 69.) Plaintiff said she last worked in 2012 or 2013, at which time she packed cantaloupes in boxes. (*Id.* at 65.) Plaintiff

explained the work was temporary during the cantaloupe season, for about three or four months. (*Id.*) Plaintiff stated the work required her to stand and lift the boxes once filled. (*Id.* at 65-66.) She estimated the boxes weighed about 40 pounds once filled. (*Id.* at 66.)

Plaintiff believed she was no longer able to work because she needed "to be sitting up and down every 20 minutes." (Doc. 11-2 at 69.) She explained she could "sit down for up to 20 minutes," after which she needed "to get up and walk for like 10, 15 minutes." (*Id.*) Plaintiff reported she alternated positions throughout the day while at home. (*Id.* at 69-70.) In addition, Plaintiff testified she would lie down during the day because medication made her drowsy. (*Id.* at 70.) She stated that because she could not go up and down the stairs, her nineteen-year-old daughter took care of cooking, cleaning, and washing the clothes. (*Id.* at 72.)

She reported that she continued to have pain following her a spinal fusion surgery, which occurred in 2017. (Doc. 11-2 at 63, 70.) Plaintiff said the surgery did not help, and she continued to experience the same pain. (*Id.* at 70.) She testified that she took Norco for pain, which "help[ed] a little bit." (*Id.* at 73.) She also took medication for anxiety, which she believed "was helping." (*Id.*)

3.     March 2019 hearing testimony

Plaintiff testified at a supplemental hearing after appearing for an additional consultative examination. (Doc. 11-2 at 22.) Plaintiff reported her past work history also included work at a beauty school, for which she answered phones and washed towels every hour. (*Id.* at 47.) She believed she could no longer do that work due to the pain she experienced "all day, morning, day, and night." (*Id.* at 49.) Plaintiff stated she also had numbness in her right leg. (*Id.* at 50.) She said she would "try walking for a few minutes" and then her leg would "start[] numbing." (*Id.*) Plaintiff estimated she could sit "about like 15 minutes" before her back started hurting and she needed to move around and walk. (*Id.* at 51.)

Plaintiff reported she stopped working in 2013, when she was doing a job that required carrying pomegranates. (Doc. 11-2 at 51-52.) She stated the pomegranates weighed "more than 50 pounds," and she could not perform the work or "even get up in the car, so that guy didn't want to take [her] back." (*Id.* at 51-52.)

///

**B.      Standards for Reviewing a Claimant's Statements**

In evaluating a claimant's statements regarding the severity of her symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403). Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony"). *Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004)

An ALJ may consider additional factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

**C.     The ALJ's Analysis**

The ALJ summarized Plaintiff's statements in the function report and her testimony at the hearings and determined "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 11-2 at 28.)  However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (*Id.*)  Following this finding, the AJ stated:

> The undersigned has considered the various physical examinations and medical imaging throughout the record that demonstrate some abnormalities regarding the claimant's lumbar spine; however, the undersigned has additionally noted evidence in the record that supports a finding that this impairment is not limiting as the claimant has alleged.  The record indicates that the claimant had slip and fall incidents around 2007 or 2008 and in 2014 (Exhibits 1F/1, 12F/33). Multiple medical images of the claimant's lumbar spine from 2009 through 2015 reveal moderate degenerative changes (Exhibits 2F/1-2; 6F/1-2, 5; 9F/7; 7F/2-3; 12F/39). At a December 2014 consultative examination with physical and rehabilitation physician Rajeswari Kumar, M.D., Dr. Kumar observed that the claimant had normal gait but she could not heel and toe walk. Her lumbar spine had tenderness and painful and limited range of motion. Straight leg raising test was negative in both the sitting and supine positions. The claimant also had reduced sensation in her right leg. (Exhibit 3F/3-5). Physical examination during this period indicated tenderness yet normal range of motion in the claimant's back (Exhibit 12F/35).
>
> More recent MRIs and x-rays of the claimant's lumbar spine from 2016 through 2018 demonstrate disc protrusion/bulges at L3-L4, L4-L5, and L5-Sl with neural foraminal encroachment and central spinal canal stenosis at L3-L4 and L4-L5. A prominent disc protrusion at L3-L4 also compressed the left L4 nerve (Exhibits 15F; 22F/l-3; 24F/31-32; 26F/21). In November 2016, orthopedic surgeon Nitin Shah, M.D., referred the claimant to a spine surgeon (Exhibit 24F/30), and the claimant's primary care provider referred the claimant to pain management (Exhibit 21F/45). Progress notes indicate that one spine surgeon refused surgery (Id. at 30), while a second surgeon diagnosed the claimant with sacroiliac (SI) joint instability, assessing that the degenerative changes in the claimant's lumbar spine did not correlate with her pain (Exhibit 19F/2-3). The claimant underwent right SI joint instability surgery in September 2017 (Id. at 17), and progress notes following surgery indicate that while the claimant's right hip pain improved significantly, she stated that her back pain increased (Id. at 15). The claimant underwent an additional consultative examination in October 2018 with physical medicine and rehabilitation physician Jerry Chuang, M.D. (Exhibit 23F). Dr. Chuang observed that the claimant had an antalgic gait and was unable to toe and heel walk. The claimant had significant tenderness to palpation and painful flexion in her lumbar spine. Straight leg raising test was positive in the supine and seated positions. Dr. Chuang further noted that the claimant had well preserved sensation in her upper and lower extremities (Exhibit 23F/3-4).
>
> In terms of the claimant's complaints of right wrist and right knee pain, the undersigned finds that clinical findings are inconsistent with the claimant's allegations of completely disabling functional limitations. At the December 2014 consultative examination, examination of the claimant's wrists and knees were within normal limits (Exhibit 3F/3-4). An October 2015 x-ray of the claimant's right wrist was

unremarkable (Exhibit 7F/7), but another MRI from March 2017 revealed diffuse bone marrow edema that was indicative of early Kienbock's disease (Exhibit 24F/26). There is limited medical imaging evidence of the claimant's right knee in the record, but a July 2018 x-ray showed evidence of moderate sized right knee joint effusion with no evidence of fracture or dislocation (Exhibit 26F/19). At the October 2018 consultative examination, examination of the claimant's right wrist showed painful but full range of motion, but examination of the claimant's right knee was normal (Exhibit 23F/3-4).

Regarding the claimant's rheumatoid arthritis (RA), the clinical findings similarly fail to support the alleged severity of symptoms and degree of limitation. The claimant's lab work shows both positive and negative antinuclear antibody (ANA) tests (see Exhibit 25F/4). Furthermore, while progress notes with the claimant's primary care provider indicate that the claimant was seeing a rheumatologist (see Exhibit 25F), rheumatology specific treatment notes are not included in the record. Although the objective evidence is unclear on the specific symptoms caused by the claimant's RA, the undersigned has considered this impairment in conjunction with the claimant's other physical impairments.

The record also reveals that pain management treatment has been mostly successful in controlling the claimant's musculoskeletal symptoms. For example, progress notes from 2017 and 2018 note that the claimant reported 80 to 90 percent pain relief from her current medication (see, e.g., Exhibit 17F/2, 3, 4, 7; 26F/23). The claimant's pain management doctor, George Perdikis, M.D., also consistently noted that the claimant's condition was "stable" (Id.). Notably, although the claimant alleged that she cannot walk for longer than two minutes before needing to rest (Exhibit 3E/2), a review of the record in this case reveals no evidence that a doctor ever prescribed the claimant a walker or other assistive device. Moreover, the undersigned notes that although the claimant's back injury allegedly originated from a slip and fall incident in 2007 or 2008, the claimant continued to work until 2013.

(Doc. 11-2 at 29-30.)

Plaintiff argues that the ALJ erred in evaluating her statements concerning the severity of her symptoms, and "did not offer legally sufficient rationale" for rejecting her testimony. (Doc. 17 at 9.) The Commissioner argues the ALJ properly considered the objective medical evidence, the effectiveness of Plaintiff's "pain management treatment," her ability to work, and lack of an assistive device for walking. (Doc. 18 at 5-8.)

    1.    Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). While a claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of

the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider").

If an ALJ cites the medical evidence to support an adverse credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (the ALJ has a burden to "identify what testimony is not credible and what evidence undermines the claimant's complaints"); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

The Ninth Circuit explained that "summariz[ing] the medical evidence supporting [the] RFC determination ... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). As a result, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 WL 4138577 at *13 (E.D. Cal. Aug. 3, 2016). For example, in *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F. 3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494. Likewise, here, the ALJ offered little more than a summary of the medical evidence to support her rejection Plaintiff's subjective statements.

The ALJ summarized the medical evidence related to several of Plaintiff's impairments, including "abnormalities regarding the claimant's lumbar spine," "complaints of right wrist and right knee pain," and rheumatoid arthritis. (Doc. 11-2 at 29.) However, the ALJ did not link the identified

findings to Plaintiff's statements in her function report or hearing testimony.  For example, the ALJ did not identify any evidence that she believed was inconsistent with Plaintiff's testimony that she needed to alternate positions throughout the day and could only sit for 20 minutes at a time before she needed "to get up and walk for like 10, 15 minutes." (*See id.* at 29, 51, 69-70.)  The ALJ also did not identify objective medical evidence that undermined or contradicted Plaintiff's statements concerning difficulty handling stress, changes in routine, and with concentration. (*See id.* at 29, 307.)  Therefore, the ALJ's summary of the medical record does not support the decision to reject Plaintiff's subjective statements. *See Brown-Hunter*, 806 F.3d at 494; *see also Coloma v. Comm'r of Soc. Sec.*, 2018 WL 5794517 at *9 (E.D. Cal. Nov. 2, 2018) (finding error where "the ALJ simply cite[d] to medical evidence and the general adequacy of Plaintiff's functioning, without any link to how they conflict with, or undermine, Plaintiff's statements").

    2.    Treatment provided

In evaluating a claimant's statements, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c).  The treatment a claimant received, especially when conservative, is a legitimate consideration in a credibility finding. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). Importantly, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, 2018 WL 1567814 at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015).

The ALJ opined Plaintiff's "treatment has been mostly successful in controlling the claimant's musculoskeletal symptoms." (Doc. 11-2 at 30.)  In support of this conclusion, the ALJ observed that "progress notes from 2017 and 2018 reported 80 to 90 percent pain relief from her current medication." (*Id.*, citing Exh. 17F p. 2, 3, 4, 7; Exh. 26F, p. 23[2] [Doc. 11-2 at 628-630, 633, 889].)  Furthermore, the ALJ found "no evidence that a doctor ever prescribed the claimant a walker or other assistive device."

---

[2] It appears this citation included a typographical error, because page 23 of Exhibit 26F is an imaging request. However, page 22 is another medical report from Dr. Perdikis. (*See* Doc. 11-2 at 889-90.)

(*Id.*)

Notably, Plaintiff had a spinal fusion surgery during the relevant period, and such procedure cannot be classified as conservative care. *See Lapeirre-Gutt v. Astrue,* 382 Fed. App'x 662, 664 (9th Cir. 2010) (treatment including cervical fusion surgery was not conservative). The ALJ may not discount such a procedure and focus only on the treatment received—and the claimant's response—following surgery. *See Alycia J. v. Saul*, 2020 U.S. Dist. LEXIS 8024 at *12 (C.D. Cal. Jan. 16, 2020) (noting "it cannot be ignored" that a claimant had a surgical procedure during the adjudicated period and finding error where "the ALJ attempted to discount Plaintiff's spinal fusion by focusing, instead, on the treatment she received after her surgery" to reject her subjective complaints). Consequently, to the extent the ALJ attempts to reject Plaintiff's statements by relying only on the treatment received and its effectiveness after her surgery in 2017, the ALJ erred in her evaluation.

In addition, "it is not enough for the ALJ to show that the [claimant's] pain was responsive to treatment; the ALJ must show that the pain was 'controlled,'… i.e., no longer debilitating." *See, e.g., Lopez v. Colvin*, 194 F.Supp.3d 903 911 (D. Az. 2016). For example, an "ALJ impermissibly discounted [the] plaintiff's testimony based on effective treatment" where the claimant reported an increase in functioning, but his "pain management required daily narcotics," and he continued to experience symptoms. *Travis H. v. Comm'r SSA*, 2021 WL 2258403 at *6 (D. Or. June 3, 2021). Likewise, here, the records cited by the ALJ indicate that though Plaintiff reported improvement in her level of pain following the spinal fusion surgery, Dr. Perdickis found Plaintiff continued to have a "limited" range of motion, positive straight leg raise tests, and muscle spasms. (*See* Doc. 11-2 at 628-630.) Thus, these records cited by the ALJ do not support the rejection of Plaintiff's statements concerning the severity of her symptoms, including the limited ability to sit and stand and one time, and her need to alternate positions throughout the day.

Finally, the ALJ notes that in the function report completed in December 2015, Plaintiff reported that "she cannot walk for longer than two minutes before needing to rest," but no doctor "prescribed the claimant a walker or other assistive device." (Doc. 11-2 at 30.) However, the ALJ did not cite any medical evidence that an assistive device was an appropriate treatment for Plaintiff's impairments—which the ALJ acknowledged also included Kienbock's disease of the right wrist and

rheumatoid arthritis—either before or after the surgical procedure in 2017. Without such information, an ALJ errs in rejecting a claimant's statements based upon the nature of the treatment provided. *See Calleres v. Comm'r of Soc. Sec.*, 2020 WL 4042904 at *5 (E.D. Cal. July 17, 2020); *Candice C. v. Saul*, 2019 WL 5865610 at *4 (C.D. Cal. Nov. 8, 2019) (an ALJ errs in rejecting subjective complaints based upon the treatment provided where she fails "to explain … what more aggressive treatment was available and appropriate for Plaintiff").

### 3. Stability of condition

The ALJ noted that Dr. Perdikis, Plaintiff's pain management physician, "consistently noted that the claimant's condition was 'stable.'" (Doc. 11-2 at 30, citing Exh. 17F p. 2, 3, 4, 7; Exh. 26F, p. 23 [Doc. 11-2 at 628-630, 633, 889].) However, the ALJ appears to erroneously equate Plaintiff's stability with functionality. *See Richardson v. Astrue,* 2011 U.S. Dist. LEXIS 132843 at *18-19, 172 Soc. Sec. Rep. Service 69 (C.D. Cal. Nov. 17, 2011). For example, in *Richardson*, the court observed:

> ALJ Steverson appears to improperly equate stability with functionality. [Citation.] While plaintiff's treating doctors note that plaintiff's lupus is stable, both doctors indicate that plaintiff has an active disease which requires aggressive medications. Significantly, Dr. Levy opined that, "because of [plaintiffs] continued fatigue, joint aches[,] and medication regime[,] regular activities of daily living are quite difficult [for plaintiff]." [Citation.] Similarly, Dr. Starr opined that plaintiff "cannot do any work that requires lifting or standing for long period of time" and "may also be limited by her arthritis." [Citation.] In other words, notwithstanding the stability of plaintiff's lupus, plaintiff's doctors opine that plaintiff will have functional limitations as a result of her lupus, medication regimen, and, possibly, her arthritis.

*Id.*, 2011 U.S. Dist. LEXIS 132843 at *18-19.

Similarly, Dr. Perdikis indicated Plaintiff was treated with both opioid and non-opioid medications. (*See* Doc. 11-2 at 628, 629, 630, 633, 889.) Dr. Perdikis also noted Plaintiff suffered from pain in her lower extremities, right hand, hip, and low back; muscle spasms; tenderness to palpation; and had a limited range of motion. (*See* Doc. 11-2 at 628, 629, 630, 633, 889.) Although Dr. Perdikis indicated in the records the ALJ cited that Plaintiff's condition was "stable," there is no indication that Dr. Perdikis believed the stability of her conditions rendered Plaintiff able to perform work for an eight-hour day. To the contrary, in each of the cited medical reports, Dr. Perdikis also noted that Plaintiff was "disabled." (*See id.*) Thus, the ALJ erred by equating the stability of Plaintiff's condition with her functionality and rejecting her statements on this basis.

4. Work history

A plaintiff's prior work history and reasons for job loss are legitimate factors in evaluating credibility. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms …. We will consider all of the evidence presented, including information about your prior work record"); *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (fact the claimant lost two jobs for reasons other than pain was an appropriate consideration in the credibility analysis); *see also Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) ("[a]n ALJ may properly consider a claimant's poor or nonexistent work history in making a negative credibility determination")

The ALJ observed that "although the claimant's back injury allegedly originated from a slip and fall incident in 2007 or 2008, the claimant continued to work until 2013." (Doc. 11-2 at 30.) The ALJ did not find, however, that Plaintiff had a poor work history prior to her alleged onset date of November 1, 2013. (*See id.*) In addition, the ALJ failed to acknowledge Plaintiff's testimony that she stopped working in 2013 when she was unable to meet the physical demands of her work and the employer "didn't want to take [her] back." (*Id.* at 51-52.) It is unclear how Plaintiff's candor over continuing to work following the initial back injury undermines the credibility of her subjective complaints—namely, that she was no longer able to work due her level of pain.

Because the ALJ did not find Plaintiff's had a poor work history or explain how Plaintiff's work history undermined her credibility related to the severity of her symptoms during the adjudicated period, this factor does not support the adverse credibility determination. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (a claimant's work history does not support an adverse credibility determination if the claimant "experience[d] pain and limitations severe enough to preclude him from maintaining substantial gainful employment").

5. Failure to identify the testimony being rejected

Finally, the ALJ must identify what testimony from a claimant is not credible. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth

13

Circuit requires an ALJ to "*specifically identify what testimony is credible* and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (the ALJ must "specifically identify[] what testimony is not credible and what evidence undermines the claimant's complaints"). Because the ALJ did not carry this burden, the ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

## D.     Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The Ninth Circuit also explained that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony may be credited as true, and remand is not appropriate. *Lester,* 81 F.3d at 834*; Smolen,* 80 F.3d at 1292.

However, courts retain flexibility in crediting testimony as true. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). A remand for further proceedings

regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Importantly, although the ALJ failed to properly reject Plaintiff's credibility using the proper legal standards, it is not clear that Plaintiff would be found to be disabled if her testimony were credited as true. Remand is appropriate for the ALJ to provide sufficient findings concerning Plaintiff's subjective complaints and the limitations Plaintiff identified in her function report and testimony.

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ erred in evaluating the record and Plaintiff's subjective complaints, and the ALJ's decision cannot be upheld. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. Plaintiff's request for review of the ALJ's decision (Doc. 17) is **GRANTED**.
2. The Commissioner's request that the administrative decision be affirmed (Doc. 18) is **DENIED**.
3. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
4. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Rosa Ines Zazueta and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **September 23, 2021**          _ /s/ Jennifer L. Thurston
                                         CHIEF UNITED STATES MAGISTRATE JUDGE